IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ED M. DEWHITT, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-04-3780 |
| § | |
| JOANNE B. BARNHART § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 14), and Defendant's Motion for Summary Judgment (Document No. 12), and Memorandum in Support (Document No. 13). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the matter is REMANDED to the Commissioner for further proceedings.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on January 25, 2005. (Document No. 10).

**I. Introduction**

Plaintiff Ed M. Dewhitt ("Dewhitt") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). According to Dewhitt, substantial evidence does not support the ALJ's decision, and the ALJ, Ward D. King, committed errors of law when he found that Dewhitt was not disabled since June 1, 1999 through November 7, 2002, because of his debilitating psychiatric impairment. Dewhitt seeks an order reversing the Commissioner's decision and awarding benefits, or in the alternative, an order remanding his claim for further proceedings. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Dewhitt was not disabled as a result of his impairments, that the decision comports with applicable law, and that it should therefore be affirmed.

**II. Administrative Proceedings**

On August 2, 2000, Dewhitt applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") claiming that he has been unable to work since June 1, 1999, as a result of chronic pain, Reiter's syndrome, chronic prostatitis, hypogonadism, degenerative disc disease, fatigue, major depression, dysthymic disorder, anxiety disorder, personality disorder and bipolar disorder. (Tr.15, 16, 24).[2] The Social Security Administration denied his applications at the initial and reconsideration stages. (Tr. 32-67). After that, Dewhitt requested a hearing before an ALJ. (Tr. 54). The Social Security Administration granted his request and the ALJ

---

[2] "Tr." refers to the transcript of the administrative record.

held a hearing on September 24, 2002, at which Dewhitt's claims were considered *de novo*. (Tr. 370-402). On November 7, 2002, the ALJ issued his decision finding Dewhitt not disabled. (Tr.12-25). The ALJ found at step one that Dewhitt had not engaged in significant gainful activity since his alleged disability onset date. He further found that Dewhitt had chronic pain, Reiter's syndrome, chronic prostatitis, hypogonadism, degenerative disc disease, fatigue, major depression, a dysthymic disorder, an anxiety disorder not otherwise specified, and a bipolar disorder, which are severe impairments. Next, at step three, the ALJ found that Dewhitt's impairments were not severe enough to meet or equal any of the listed impairments in the Social Security Regulations, which would require a finding that he was disabled. At step four, the ALJ concluded that Dewhitt retained the residual functional capacity ("RFC") to perform the exertional demands of medium work that was restricted to the extent that Dewhitt could not perform work that required extended concentration or attention, extensive and involved public contact, and more than moderate changes in the work setting. The ALJ further concluded that Dewhitt could not perform his past relevant work. At step five, based on Dewhitt's RFC, and the testimony of Michael Driscoll, a vocational expert, the ALJ, using the Medical-Vocational Guidelines as a framework, *see* 20 C.F.R. § 404.1569 & Pt. 404, subpart P, App. 2, Table No. 3, Rule 203.21-203.23, concluded Dewhitt was not disabled because he could perform a restricted range of medium work and could perform jobs such as a hospital cleaner, driver-helper on a sales route, and production sandwich maker, all of which are jobs that exist in significant numbers in the regional and national economy, and that he was, therefore, not disabled within the meaning of the Act.

  Dewhitt sought review by the Appeals Council of the ALJ's adverse decision on December 9, 2002. (Tr. 8). The Appeals Council will grant a request to review an ALJ's decision if any of the

following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970, 416.1470. After considering Dewhitt's contentions in the letter Memorandum Brief and Argument (Tr. 366-368), which included medical records described by Dewhitt as new and material,[3] in light of the applicable laws, regulations and rulings, the Appeals Council concluded, on April 29, 2004, that there was no basis upon which to grant Dewhitt's request for review. (Tr.3-7). The ALJ's findings and decision thus became final. Dewhitt has timely filed his appeal of the ALJ's decision. 42 U.S.C. § 405(g). The Commissioner has filed a Motion for Summary Judgment (Document No. 12), and a Memorandum in Support thereof (Document No. 13), and Plaintiff has filed a Motion for Summary Judgment (Document No. 14). This appeal is now ripe for ruling.

      The evidence is set forth in the transcript, pages 1 through 402 (Document No. 7). There is no dispute as to the facts contained therein.

---

[3] Although the Letter Memorandum Brief and Argument submitted by Dewhitt to the Appeals Council referred to the medical report of Richard H. Leggett, D.O. dated October 17, 2003, this report was not included in the administrative record. The only records submitted in connection with Dewhitt's appeal were the records from the West Texas Centers for MHMR for the period of time between June 10, 2002 to October 25, 2002. With respect to these treatment notes, there are progress notes by Dr. Arif Khan, M.D., Dewhitt's treating physician. According to the treatment notes, Dewhitt was seen by Dr. Khan on June 12, 2002 (Tr. 365), July 10, 2002 (Tr. 364), August 20, 2002, (Tr. 360, 363), October 1, 2002 (Tr. 359), and October 25, 2002 (Tr. 369). The progress notes reveal that Dewhitt continued to be treated for dysthymia and major depressive disorder, recurrent, severe without psychotic features by history. In addition, the progress notes reveal that Dewhitt's mental health was greatly influenced by his struggle with finances and feelings of being alone.

**III. Standard for Review of Agency Decision**

The court, in its review of a denial of disability benefits, is only: "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a

suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

**IV.  Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)(quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986).

The Commissioner applies a five-step sequential process to determine disability status:

6

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step five that Dewhitt, despite his impairments and limitations, could perform medium work that was reduced only to the extent that Dewhitt "cannot perform work requiring extended concentration or attention, he cannot perform work requiring extensive and involved public contact, and he cannot perform work involving more than moderate changes in the work setting." (Tr. 22-23, 24). Then, based on Dewhitt's age (53), education (college), work experience, and relying on the testimony of a vocational expert and the Medical-Vocational

Guidelines as a framework, the ALJ concluded that Dewhitt was not disabled because he could perform medium work with restrictions, and could perform jobs such as hospital cleaner, driver-helper on a sales route, and production sandwich maker, all of which are jobs existing in significant numbers at the regional and national levels. In this appeal, the Court must determine whether substantial evidence supports the ALJ's step five finding. According to Dewhitt, substantial evidence does not support the ALJ's step five finding because evidence regarding Dewhitt's disability was so overwhelming that, in a subsequent application, he was awarded benefits by the Commissioner. In particular, Dewhitt has attached to his Motion for Summary Judgment, his "Notice of Award" dated March 16, 2004, which states: "We found that you became disabled under our rules on November 8, 2002. This is a different date given on the application." (Document No. 14, Exhibit A.). According to Dewhitt, because he was found disabled by the Commissioner as of *November 8, 2002*, in a subsequent application, substantial evidence does not support the ALJ's *November 7, 2002*, decision that he was not disabled within the meaning of the Act. Dewhitt maintains he has been disabled since June 1, 1999 through November 7, 2002, and that contrary to the ALJ's decision, his mental health records clearly show that he met the requirements of Listing 12.04 Affective Disorder (Depression) as evidenced by his extensive mental health records from Wichita Falls, Texas, and later Sweetwater, Texas. According to Dewhitt, these records document the severity and recurrent nature of his depression, including that his depression had a psychotic component, and that he has been on numerous psychotropic medications such as Zoloft, Effexor, Serzone, Xanax, Tofranil, Paxil, Lithium, Librium, Buspar, Ambien, Depakote, Klonopin, Wellbutrin and Remeron. In addition, Dewhitt argues that the ALJ erred by discounting the testimony of his counselor, Ms. Greta Estes, concerning Dewhitt's ability to sustain employment in a competitive workplace. According to

Dewhitt, the ALJ erred by rejecting the opinions of his treating mental health professionals and by not fully developing the record. The Commissioner responds that the ALJ gave the proper weight to the opinions of Dewhitt's treating mental care professionals regarding his alleged mental impairment and that substantial evidence supports the ALJ's finding that Dewhitt was not disabled because of a mental impairment. According to the Commissioner, all the mental limitations that the ALJ found supported by the record were included in the ALJ's RFC determination. For example, the ALJ found that Dewhitt's mental impairments reduced his RFC to the extent that he could not perform work requiring extended concentration or attention, extensive and involved public contact and more than moderate changes in the work setting.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren,* 925 F.2d at 126. Any conflicts in the evidence are to be resolved by the ALJ, and not the Court. *see Newton v. Apfel*, 209 F.3d 448, 452 5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

**V. Discussion**

It is undisputed that Dewhitt applied for DIB and SSI alleging that he has been disabled since June 1, 1999, because he has chronic pain, Reiter's syndrome, chronic prostatis, hypogonadism, degenerative disc disease, fatigue, major depression, a dysthymic disorder, an anxiety disorder, a personality disorder not otherwise specified, and a bipolar disorder. These applications were denied

by the ALJ on November 7, 2002. Thereafter, Dewhitt sought review by the Appeals Council on December 9, 2002. The Appeals Council denied his request for review on April 29, 2004. Although not a part of the administrative record before the undersigned Magistrate Judge, Dewhitt applied again for benefits, and in a letter dated March 16, 2004, was awarded benefits and, in connection therewith, was found disabled as of November 8, 2002, a day after the ALJ's issued the opinion at issue in the instant action. Indeed, the "Notice of Award" was issued while Dewhitt's claim was pending before the Appeals Council. Dewhitt argues that the subsequent benefit award shows he was disabled at the time the ALJ issued his decision and supports his claim that substantial evidence does not support the ALJ's decision.

In December 1999, the Commissioner issued new policy, SSA-EM-99147, which addresses situations like Dewhitt's, where a claimant has an application pending before the Appeals Council, has filed a subsequent application for benefits, and that subsequent application is granted during the pendency of the appeal of the initial claim.[4] The policy provides that the new file is to be sent to the Appeals Council to determine if it contains new and material evidence relating to the time period that the ALJ was evaluating on the prior claim. The policy provides in pertinent part:

> 1. Effective immediately, when a prior claim is pending at the [Appeals Council] we will send subsequent disability claims to the DDS for development and adjudication regardless of whether they are filed under the same or a different title than the prior claims pending at the AC. The new procedure includes claims that have already been filed or that have a protective filing date before the date of this EM, and that have not yet been forwarded to the AC. It does not include claims that are merely duplicates; e.g., a claim for Disability Insurance Benefits in which the date last insured expired

---

[4] The "Processing Subsequent Claims: New Policy Announced" can be found at www.ssas.com/newclaim.htm, and has been implemented through a variety of Program Operations Manual System provisions such as SSA POMS DI 12045.027, 2001 WL 1932370; SSA POMS DI 20101.25, 2002 WL 1878621; and SSA POMS SI 04040.025, 2002 WL 1879213.

10

> before the administrative law judge's (ALJ's) decision on the prior application for the same benefits.
>
> 2. The DDS will limit any favorable determination on the subsequent claim to the period beginning with the day after the date of the ALJ's decision. If a subsequent claim results in a favorable determination, including a later onset or closed period of disability determination, the determination will be effectuated with an onset date no earlier than the day after the date of the ALJ decision on the prior claim. *After effectuation of the determination, the subsequent claim will be sent to the AC to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim.* (emphasis added).

"'[W]here the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' If prejudice results from a violation, the result cannot stand." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). Here, because the Appeals Council's denial of Dewhitt's Request for Review does not mention Dewhitt's subsequent application, and because the subsequent application and medical records related thereto were not included in the administrative record, it appears that the Appeals Council failed to follow SSA-EM-99147. As such, Dewhitt has shown he was prejudiced by the Appeals Council's failure to follow its own internal procedures.

Based on the close temporal proximity between the subsequent award of benefits and issuance of the ALJ's decision, and based on the nature of Dewhitt's impairments, upon this record, Dewhitt has shown there is a high likelihood that the two applications were based on the same or similar medical conditions, and therefore, the medical records from the subsequent application were relevant to the prior claim pending before the Appeals Council, and should have been sent to the Appeals Council and included in the administrative transcript submitted to the Court for consideration in determining whether the ALJ's decision on the first claim is supported by substantial evidence. In

*Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), the Fifth Circuit held that where new evidence is submitted by a claimant and is considered by the Appeals Council, the Commissioner's final decision includes the Appeals Council's denial of a request for review and the record before the Appeals Council. Because the Commissioner failed to follow the procedures outlined in SSA-EM-99147, the matter must be remanded to the Commissioner in order for the Appeals Council to properly evaluate Dewhitt's subsequent claim to determine whether the subsequent claim constitutes new and material evidence relating to the period that the ALJ was evaluating on the prior claim. *see Barrientoz v. Massanari*, 202 F.Supp.2d 577 (W.D.Tex) (Social Security Administration's failure to follow internal regulations required remand for reconsideration of evidence by ALJ); *Reichard v. Barnhart*, 285 F.Supp. 2d 728 (S.D.W.Va. 2003) (same).

## V. Conclusion

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner failed to properly use the guidelines propounded by the Social Security Administration, and as a result, substantial evidence does not support the ALJ's decision, and the matter should be remanded for further proceedings. As such, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED, Defendant's Motion for Summary Judgment (No. 12), is DENIED and the matter is REMANDED to the Social Security Administration pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further proceedings consistent with the determinations made herein.

Signed at Houston, Texas, this 25th day of August, 2005.

_____
Frances H. Stacy
United States Magistrate Judge